Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 274 | **DATE** | 3/14/03 |
| **CASE TITLE** | USA vs. Mares-Martinez, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendants' motion to suppress evidence. As a matter of housekeeping, defendant Juan Mares-Martinez' motion to have officers admit or deny (112-3) is terminated as moot (the relevant officers testified at the evidentiary hearing); defendant Carrera-Nevarez's motion to quash arrest and suppress (53-1, 53-2) was withdrawn on 7/8/02 and is therefore terminated; and the government's motions to quash subpoenas and for protective order (106-1, 111-1) have previously been ruled upon and are therefore terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 17 2003 date docketed | 16 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| OR | courtroom deputy's initials | 03 MAR 16 PM 12:19 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 00 CR 274 |
| ) | |
| JUAN MARES-MARTINEZ, et al. ) | |



MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant Juan Mares-Martinez, joined by defendants Hugo Mares-Martinez and Armando Castillo-Carrillo, has moved to suppress the fruits of two wiretaps on the grounds that the court orders authorizing wiretaps were obtained by means of intentional false statements and omissions. The Court granted Mares-Martinez's request for an evidentiary hearing, *see United States v. Mares-Martinez,* ___ F. Supp. 2d ___, 2002 WL 31913456 (N.D. Ill. Dec. 31, 2002), and we held the hearing on January 27-28, 2003. For the reasons stated below, the Court denies defendants' motion to suppress.

The evidence that the government intends to offer at trial includes tape recordings of the defendants that were intercepted pursuant to two wiretaps: one authorized by a California state court judge regarding a cellular phone used by Juan Mares-Martinez (the "CA 99-5 wiretap"), and another authorized by this Court's then-Chief Judge Marvin Aspen regarding a cellular phone belonging to Hugo Mares-Martinez (the "Chicago wiretap"). The CA 99-5 wiretap was authorized based on an affidavit signed by Detective Don Jones of the Los Angeles County Sheriff's Department. The Chicago wiretap was authorized based on an affidavit signed by Special Agent Sean Sears of the United States Drug Enforcement Administration. Sears'

affidavit included information that had been garnered pursuant to the earlier-issued CA 99-5 wiretap warrant.

Each affidavit included a discussion of why the affiant believed that alternative investigative procedures had been tried and failed, appeared unlikely to succeed if tried, or were too dangerous to employ – a requirement for obtaining a wiretap under both California and federal law. In his affidavit, Jones stated that "[t]here are no confidential informants or undercover agents in a position to assist with the current investigation ...." Jones Affid., p. 37. In his affidavit, Sears similarly stated that "[l]aw enforcement officers involved in this investigation have not [been] able to utilize confidential sources to assist in this investigation." Sears Affid., ¶40. Defendants allege that these statements were false, contending that one of the purported targets of the CA 99-5 wiretap, Isaias Ortiz Gonzalez, was actually a government informant at the time of Jones' affidavit and that Jones knew or recklessly disregarded this fact. Defendants do not appear to contend (nor could they successfully contend) that DEA Agent Sears made an intentional or reckless false statement. Rather, their theory with regard to the Chicago wiretap application is that it was premised in significant part on the fruits of the CA 99-5 wiretap, and/or that Jones knowingly communicated false information regarding the lack of informants to Sears. As the Court indicated in its ruling granting a hearing on the motion to suppress, either theory, if proven, would require suppression of the fruits of the Chicago wiretap.[1]

The Court previously ruled that defendants' evidence – a combination of circumstantial evidence and an expert's interpretation of that evidence – was sufficient to entitle them to an

---

[1] The government does not argue that the affiants' statements regarding the unavailability of informants were immaterial to the showing of probable cause.

evidentiary hearing. But the sufficiency of this same evidence to require suppression of the fruits of the wiretaps is a different matter. Defendants must prove by a preponderance of the evidence that Sears' statement that there were no informants was false, that Sears made the false statement intentionally or with reckless disregard of the truth, and that it was material to the showing of probable cause. *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978). As the Court indicated in its earlier ruling, this is a higher standard than the one the defendants had to meet to obtain a hearing.

At the hearing, the defendants offered no direct evidence that Ortiz Gonzalez was an informant. Indeed, all of the direct evidence was to the contrary. Ortiz Gonzalez is not listed as an informant in any DEA database, and the government's witnesses involved in the underlying investigation all denied that Ortiz Gonzalez had ever acted as an informant.

Instead, the defendants relied on a combination of circumstantial evidence and the testimony of their expert witness, former DEA Frank Panessa, who attempted to interpret the circumstantial evidence. The circumstantial evidence, boiled down to its essentials, consists of the fact that Ortiz Gonzalez was not prosecuted even though the authorities had evidence establishing, at a minimum, probable cause to believe that he had participated in significant narcotics transactions. The defendants infer from this that Ortiz Gonzalez was an informant. But though that is certainly one possible inference from the evidence, it is not the only one or the most reasonable or likely one. The more likely inference is that prosecuting authorities, rightly or wrongly, did not believe they had evidence sufficient to obtain a conviction, or that they simply decided to focus their attention elsewhere.

Panessa's testimony is not to the contrary. His qualifications are undeniably outstanding

3

(they are listed in our previous opinion, so we will not repeat them here), and his testimony was credible as far as it went. But for all practical purposes, he was making an educated guess about what the evidence meant. And even so, Panessa stopped short of an opinion that Ortiz Gonzalez *was* an informant. Indeed, he did not even state that this was the most likely or the most reasonable inference from the circumstantial evidence; he said only that the notion that Ortiz Gonzalez was an informant was "the first thing that comes to mind" from the fact that Ortiz Gonzalez was never indicted despite the fact that Jones' investigative team had collected enough evidence on him to establish probable cause. Tr. 1/28/03, p. 199. This is far from an opinion that Ortiz Gonzalez was an informant.

The Court does not believe that defendants' proposed inference from the fact of Ortiz Gonzalez's non-prosecution is reasonable or supported by the record. First of all, it was not up to Jones and the other investigators to determine who to charge; their task was to gather evidence and present it to prosecutors, who in turn made the decision whom to indict. From Jones' testimony, which the Court found credible, it appears that the investigation that Panessa says should have led to Ortiz Gonzalez's indictment represented the first time that Jones had worked with federal prosecuting authorities. It does not appear that he communicated directly with the federal prosecutor responsible for making the charging decisions to determine why she acted as she did. Jones did, however, believe that Ortiz Gonzalez should be prosecuted. And he acted on his belief, drafting for the federal prosecutor a 34-page criminal complaint naming Ortiz Gonzalez and nine others, hoping to charge them with conspiracy to distribute narcotics. *See*

Govt. Ex. 3 (submitted under seal).[2] Jones would not have done the work necessary to prepare the complaint if he had known or understood Ortiz Gonzalez to be an informant at the time. And there is nothing to suggest that Jones later learned anything about Ortiz Gonzalez's status to suggest that he was an informant. Indeed, Jones credibly testified that even after his preparation of the draft complaint, he continued to try to put together evidence to make a case against Ortiz Gonzalez.

Though Panessa testified that none of his recommendations for prosecution were ever turned down when he was a DEA agent, there is no basis to believe that his experience as a federal law enforcement agent is universal in that regard, and in any event Jones, a local police officer delegated to a federal task force and working with a federal prosecutor for the first time, is not similarly situated to Panessa. These same circumstances also explain to the Court's satisfaction the fact that Jones did not follow up with the federal prosecutor or try to get her to reconsider – facts from which defendants attempt to infer, it appears, that Jones' testimony about wanting to prosecute Ortiz Gonzalez should not be believed. Though Jones has no direct knowledge why the prosecutor declined to indict Ortiz Gonzalez, it is a reasonable inference from the evidence that the prosecutor made a decision to focus on the suspects identified in Jones' investigation against whom they believed they had a stronger or more direct case. And even if, hypothetically, the prosecutor made her decision because of a desire to obtain Ortiz Gonzalez's cooperation or because he was already cooperating with her – a theory not advanced

---

[2] Jones' supervisor, Los Angeles Sheriff's Detective Harry Marco, stated that his understanding was that Jones' draft complaint was not submitted to prosecutors. Tr. 1/28/03, p. 191. The Court, however, credits Jones' testimony that he submitted the draft complaint and chalks up Marco's contrary testimony to faulty recollection or lack of knowledge.

by defendants, we might add – that would not establish *Jones'* knowledge or reckless disregard of Ortiz Gonzalez's purported informant status.

For these reasons, the Court finds that defendants have failed to establish by a preponderance of the evidence that Jones' denial in the CA 99-5 wiretap application that the investigation had produced any informants was knowingly or recklessly false, or that Sears' similar denial in the Chicago wiretap application was knowingly or recklessly false.

## Conclusion

The Court denies defendants' motion to suppress evidence. As a matter of housekeeping, defendant Juan Mares-Martinez's motion to have officers admit or deny [item 112-3] is terminated as moot (the relevant officers testified at the evidentiary hearing); defendant Carrera-Nevarez's motion to quash arrest and suppress [items 53-1, 53-2] was withdrawn on 7/8/02 and is therefore terminated; and the government's motions to quash subpoenas and for protective order [106-1, 111-1] have previously been ruled upon and are therefore terminated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 14, 2003